[No. B154863. Second Dist., Div. Five. Mar. 17, 2003.]

SHON SHAFER, Plaintiff and Appellant, v.
LOS ANGELES COUNTY SHERIFF'S DEPARTMENT et al., Defendants
and Respondents.

## COUNSEL

Lackie & Dammeier, Dieter C. Dammeier and Michael A. Morguess for Plaintiff and Appellant.

Law Offices of Hausman & Sosa, Jeffrey M. Hausman and Larry D. Stratton for Defendants and Respondents.

## OPINION

**MOSK, J.**—Plaintiff and appellant Shon Shafer (Shafer) appeals from that portion of a judgment denying his petition for writ of mandate that requested

certain relief for an alleged violation of the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.)[1] (the Act) by respondents Los Angeles County Sheriff's Department and Leroy Baca, in his capacity as Sheriff of the County of Los Angeles (collectively the sheriff's department). Shafer contends that respondents failed to comply with the Act by not advising him he was under investigation during a workers' compensation deposition and by using improperly obtained information from another interrogation. The sheriff's department terminated Shafer for false statements made during the deposition and a later interrogation. By his petition, Shafer sought, inter alia, to prohibit the sheriff's department from using the deposition and later statements at the hearing on his appeal of his discharge before the Los Angeles City Civil Service Commission (the Commission). The trial court required the exclusion of one statement but not others. The Commission upheld the termination, and that decision is the subject of another action.

We hold that the case is not moot, for any determination here may be used in the mandamus proceeding concerning the Commission decision. We uphold the trial court's decision not to suppress certain statements made by Shafer as within the trial court's discretion to fashion an "appropriate remedy" under the Act. We also determine that a county counsel in a workers' compensation proceeding was not acting in concert with Shafer's commanding officer so as to be bound by the Act. We therefore affirm the trial court's decision.

### FACTUAL AND PROCEDURAL BACKGROUND

The sheriff's department employed Shafer as a deputy sheriff from June 1991 through November 2000. From 1993 until 1998 he was assigned to the men's central jail. In 1997, while working at the jail, Shafer injured his foot hopping off a bunk. He filed a workers' compensation claim. Ultimately he underwent surgery and was placed on "Injured on Duty" status pursuant to Labor Code section 4850.

During Shafer's absence, a deputy sheriff (Sergeant Nutt) regularly contacted him to inquire as to his condition. Shafer reportedly stated that he could not work because of the condition of his foot and the medication he was taking. Shafer's workers' compensation claim ultimately led to a proceeding before the Workers' Compensation Appeals Board.

Sergeant Nutt stated that a confidential informant, who was Shafer's acquaintance, reported that Shafer stated that he, Shafer, "was a typical

---

[1]All further statutory references are to the Government Code unless otherwise indicated.

county employee milking the system and that Shafer had . . . made statements about the tax-free money that he was earning and how he was spending it and that he was going to stay off work as long as he could and try to earn his way on to the PGA tour, things . . . things to that effect which caused me [Sergeant Nutt] to have great concern."

On May 20, 1999, a sheriff's department memorandum reflected a request for an investigation of Shafer based on the informant's statement that Shafer had played golf several times. Starting about May 27, 1999, the sheriff's department began surveillance of Shafer. Shafer was observed engaging in physical activity without the appearance of discomfort. He was videotaped mowing the lawn and walking without any visible evidence of pain.

On June 29, 1999, Sergeant Nutt telephoned Shafer and asked him if he was able to engage in physical activities, such as mowing the lawn. Sergeant Nutt stated that Shafer responded "he needed to take . . . pain medication . . . and that he couldn't work light duty, but he really wanted to come back to work. . . ." He said that much of the time he needed to be on crutches. In response to a question from Sergeant Nutt as to whether he had been able to mow the lawn, Shafer said he had "recently tried to mow his lawn for the first time and that it took him two and a half hours to do the backyard. Up until that time, which he indicated was in the month of June, he said the only way his lawn was mowed was if his father had come over and do it for him." Based on the videotape, Sergeant Nutt believed Shafer was being untruthful.

As part of Shafer's workers' compensation proceeding (Lab. Code, § 5710) (which appeared to be before the Workers' Compensation Appeals Board), on October 13, 1999, Senior Associate County Counsel Leah Davis took Shafer's deposition, at which his counsel was present and at which Shafer was under oath. As reported in the sheriff's department "Interview Summary," Ms. Davis stated that prior to the deposition she had information from the sheriff's department that Shafer had made comments to a neighbor about playing golf, and thus she wanted to determine if Shafer was engaging in athletic activity while on disability and allegedly not able to work. Ms. Davis also reportedly stated that "[a]dditionally, the deposition was to provide [Shafer] an opportunity to deny the information and prove the golfing allegation was untrue."

At that deposition of Shafer, the following colloquy took place:

"Q. Do you play any sports or engage in any athletic activities?

"A. Prior to my injury, I did.

"Q. Okay. Before August of '97, what sorts of sports athletic activities did you engage in?

"A. Running, biking, snow skiing, surfing, water skiing, golf, tennis.

"Q. The gamut, huh? Was there anything you didn't do?

"A. No. Bungee jumping.

"Q. So you haven't done any running since August of '97?

"A. Correct.

"Q. Biking?

"A. Biking, I was doing periodically up until I had the surgery in January.

"Q. Snow skiing?

"A. I haven't snow skied since the injury.

"Q. Golfing?

"A. I was periodically golfing up until January when I had the surgery.

"Q. So not since the surgery?

"A. Correct."

Ms. Davis asked Shafer to sign the deposition transcript, but according to her, Shafer's attorney said they could not locate the original transcript and that it "was the first time ever he [the attorney] had not been able to produce an original transcript." She said, "and I pointed out to him that it was the first time that I had ever asked for it, in advance of trial. So it was kind of an impasse."

On September 13, 2000, a sheriff's department investigator from the internal affairs department (Sergeant Colton) interviewed Shafer, with Shafer's counsel present. Shafer acknowledges that at that time Sergeant Colton advised him he was under investigation. Sergeant Colton questioned Shafer about his deposition testimony and corrections to the transcript.

Shafer stated he had made corrections to the deposition, which corrections were apparently misplaced. He said he submitted a second set of corrections

"from his memory" to replace the "lost" set. After that statement and during the interrogation, Shafer's attorney stated Shafer had "made the second set of corrections based on notes he had written while originally reviewing the deposition transcript." Thus, notwithstanding Shafer's earlier statement, Shafer's attorney stated that Shafer obviously could not have filled out a second set of corrections from memory. The notes of the interrogation provided as follows:

"Dammeier [Shafer's attorney]: Deputy Shafer is feeling a little bit badgered and intimidated in here and questions are coming out pretty fast, and he's here to be up front. He did not fill out this sheet from memory. That's very obviously impossible, but he didn't have the deposition either. He used some other stuff and you can ask him about that if you want.

"Colton: Well that's like a . . . that's like a bombshell, so I tell you what, let me . . . let me just say; Shon, you, obviously, know the gravity of the situation; correct?

"Shafer: Yes."

On October 19, 2000, the sheriff's department notified Shafer that it intended to discharge him from his position of deputy sheriff. Four charges were included in the notice of discharge, with three of them resulting from the June 29, 1999, October 13, 1999, and September 13, 2000, statements:

"1. That in violation of Manual of Policy and Procedures Section 3-01/040.70, False Statements, on or about October 13, 1999, you knowingly made false statements, after affirming under penalty of perjury during your Workerman's [sic] Compensation hearing to answer questions truthfully, when you stated you had not played golf from January 11, 1999 through October 13, 1999, while off duty on Injured on Duty status.

"2. That in violation of Manual of Policy and Procedures Section 3-01/040.70, False Statements, between March 1, 1999 and November 5, 1999, and specifically on June 29, 1999, you made false statements to Lieutenant Nutt (who at the time was the Operations Sergeant at Temple Station), regarding your inability to work due to drowsiness caused by pain medication and the fact you needed crutches to move around.

"3. That in violation of Manual of Policy and Procedures Section 3-01/030.10, Obedience to Laws, Regulations and Orders and/or 3-02/040.05, Occupational Injury/Illness-Employee's Responsibility, you repeatedly left your place of residence between January 11, 1999 and November 6, 1999,

while on Injured on Duty status and assigned to your residence on an 'A' schedule (Monday through Friday), without obtaining a waiver from this policy from your unit commander or operations lieutenant.

"4. That in violation of Manual of Policy and Procedures Sections 3-01/ 040.70, False Statements; and/or 3-01/040.75, Failure to Make Statements and/or Making False Statements During Departmental Internal Investigations; and/or 3-01/040.76, Obstructing an Investigation, on or about September 13, 2000, you knowingly made false statements during an interview with IAB investigators when you stated you had completed a deposition correction from memory and then after conferring with your attorney, changed your statement by saying you had used notes to make the corrections."

On November 9, 2000, the sheriff's department discharged Shafer from his position of deputy sheriff based upon the four charges. The termination letter also gave Shafer notice that he could file an appeal of his termination with the Commission. Shafer filed such an appeal. Because the administrative discharge hearing before the Commission occurred after the June 13, 2001 trial on Shafer's mandate petition that is the subject of this appeal, the administrative record from that hearing before the Commission was not part of the record in the proceeding that is before us. The sheriff's department, however, filed a request for judicial notice of that administrative record, which request we granted.

On March 9, 2001, prior to the Commission's administrative hearing on Shafer's discharge, Shafer filed a petition for writ of mandate in the present action seeking, inter alia, to prevent the admission of his statements at the Commission's hearing. Shafer contended that he was subjected to several interrogations in violation of the Act, including his workers' compensation deposition, because the sheriff's department did not warn him that he was under investigation prior to an interrogation and deposition. Shafer alleged that all of his statements, even after warnings were given, were the "derivative fruit" of the sheriff's department's purported failure to warn him that he was under investigation for workers' compensation fraud, and that therefore all of his statements should be suppressed.

On June 13, 2001, the trial court granted Shafer's petition "as to statements made [by Shafer] to Sgt. Nutt, except as offered for impeachment and otherwise in accordance with Government Code Section 3303(f)(3)." The trial court denied the petition as to other statements, ruling that: "Deposition testimony, however, is admissible. First, petitioner himself initiated the Workers' Compensation proceedings. Second, the deposition was under the control of the County counsel, not the Los Angeles County Sheriffs [sic]

Department." The trial court did not preclude any other ground for Shafer's termination.

Shafer's discharge hearing before the Commission occurred on July 10 and 12, 2001. At the discharge hearing, because of the trial court's ruling, the sheriff's department proceeded on the charges set forth in paragraphs 1, 3, and 4 of the discharge letter. The hearing officer sustained Shafer's discharge on two of these three remaining grounds—i.e., paragraphs 1 and 4, for false statements Shafer made in the deposition and in the Internal Affairs Department interview. The Commission refused to stay the decision until after this appeal. On September 19, 2001, the Commission's decision was declared to be final.

The trial court in this case entered the final judgment on October 4, 2001, after Shafer's administrative hearing before the Commission. That judgment provided that "[a]llegedly false statements made by Petitioner Shon Shafer to Sergeant Richard Nutt between March 1, 1999 and November 5, 1999, and specifically on June 29, 1999," are not admissible in the Commission proceeding except for impeachment purposes. On November 26, 2001, Shafer appealed the trial court judgment.

DISCUSSION

*Standard of Review*

■ "In determining the scope of coverage under the [Public Safety Officers Procedural Bill of Rights] Act, [the Court of Appeal may] independently determine the proper interpretation of the statute and [is] not bound by the lower court's interpretation. [Citation.]" (*Binkley v. City of Long Beach* (1993) 16 Cal.App.4th 1795, 1806 [20 Cal.Rptr.2d 903].) Thus, whether the Act applies to certain acts by the sheriff's department is an issue we consider de novo. (See *City of Los Angeles v. Superior Court* (1997) 57 Cal.App.4th 1506, 1514 [67 Cal.Rptr.2d 775].) Whether suppression of a statement for a violation of the Act is an appropriate remedy is within the discretion of the trial court, and we review that decision to determine if there has been an abuse of discretion. (*Id.* at pp. 1516-1517.) As to any factual findings by the trial court, our review is based on the substantial evidence standard of appellate review applied to trial court decisions in administrative cases. (*Fort Mojave Indian Tribe v. Department of Health Services* (1995) 38 Cal.App.4th 1574, 1590 [45 Cal.Rptr.2d 822].)

*The Act*

The Act lists basic rights and protections afforded all peace officers by the public entities that employ them. (§ 3300 et seq.) Section 3303 "requires

that, prior to interrogation, an officer must be informed of the identity of the interrogators and the nature of the investigation." (*California Correctional Peace Officers Assn. v. State of California* (2000) 82 Cal.App.4th 294, 305-306 [98 Cal.Rptr.2d 302] (*California Correctional Peace Officers Assn.*).)

Section 3309.5 is the part of the Act that deals with remedies. It provides that "[t]he superior court shall have initial jurisdiction over any proceeding brought by any public safety officer against any public safety department for alleged violations of this chapter." (§ 3309.5, subd. (b).) When the superior court finds such a violation, "the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer." (§ 3309.5, subd. (c)(1).)

*Mootness*

■ The sheriff's department contends that the appeal is moot because the Commission has already acted, and its decision is final and cannot be modified. The sheriff's department had asserted that Shafer did not file a timely petition for an administrative mandamus writ pursuant to Code of Civil Procedure section 1094.5. Shafer requests that we judicially notice pleadings in *Shafer v. Los Angeles County Sheriff's Dept.* (Super. Ct. L.A. County, No. BS073225) commenced on December 12, 2001, showing that Shafer did in fact file such a petition. We granted that request.[2]

In *Mounger v. Gates* (1987) 193 Cal.App.3d 1248, 1256 [239 Cal.Rptr. 18] (*Mounger*) the court stated that section 3309.5 was "specifically designed to allow an officer to pursue a remedy immediately in the courts for violation of [the Act] during the investigation and not be required to wait for judicial review after administrative consideration of those violations." The court in *Mounger* held that section 3309.5 authorized Mounger to pursue simultaneously his judicial relief under section 3309.5 and his administrative appeal from any discipline imposed. (*Mounger, supra,* 193 Cal.App.3d at pp. 1256-1257; see *Zazueta v. County of San Benito* (1995) 38 Cal.App.4th 106, 113 [44 Cal.Rptr.2d 678] [participation in arbitration waived rights under section 3309.5, but distinguishing *Mounger*].)

In *Gales v. Superior Court* (1996) 47 Cal.App.4th 1596, 1602 [55 Cal.Rptr.2d 460] (*Gales*), the court stated, "What *Mounger* does not tell us is

---

[2]We note that Shafer had not served the petition, and thus the sheriff's department was not aware of it. Shafer can, however, now refer to it to meet the contention of mootness. Undoubtedly, Shafer was seeking to delay that case until this case is decided.

whether a police officer is entitled—after the public entity employer has issued its final decision—to file an action under section 3309.5." The court concluded that "an officer is entitled to file a section 3309.5 action after his or her public entity employer has issued its final administrative decision." (*Ibid.*)

The court in *Gales* noted that a section 3309.5 proceeding deals with whether a public entity employer violated an officer's rights under the Act, while a Code of Civil Procedure section 1094.5 mandamus action calls for a determination of the validity of the final administrative decision made by the public entity employer. (*Gales, supra,* 47 Cal.App.4th at pp. 1602-1603.) Under *Gales,* if there has been a final administrative decision, the officer may file an action pursuant to section 3309.5 only if the officer has filed or files concurrently a Code of Civil Procedure section 1094.5 mandamus petition challenging the administrative decision. (*Gales,* at pp. 1602-1603.)

The court in *Gales* explained, "This should present no great difficulty for the officer, and none for the court since an action permitted by section 3309.5 is remarkably similar to a mandamus petition. [Citations.] The subject matter of the actions will, of course, overlap, and consolidation will undoubtedly be required. And, issues decided in one action will be binding in the other. For example, should a judicial officer determine, in connection with a section 3309.5 action, that a violation of the Act occurred, that finding will be binding in the Code of Civil Procedure section 1094.5 action. What type of order or course of action is required should such a determination be made will depend on the facts of each case." (*Gales, supra,* 47 Cal.App.4th at p. 1603.)

Here, there was no consolidation.[3] But there is no reason why a determination in this proceeding cannot occur independently of the Code of Civil Procedure section 1094.5 mandamus proceeding, and, if rendered before the conclusion of that mandamus proceeding, be binding therein.

Accordingly, the proceeding we are reviewing is not moot. Any determination made here will be binding on the trial court in the mandamus proceeding. As stated in *Gales, supra,* 47 Cal.App.4th at page 1603, should we determine that the trial court in the section 3309.5 action erred in not suppressing statements taken in violation of the Act, how that would affect the Code of Civil Procedure section 1094.5 proceeding would have to be determined by the trial court in that proceeding.

---

[3]Shafer filed the Code of Civil Procedure section 1094.5 action because of the language in *Gales, supra,* 47 Cal.App.4th at pages 1602-1603.

*Deposition Testimony*

 Shafer contends that the failure of the sheriff's department and the county counsel to inform him that he was under investigation and of the nature of the investigation violated section 3303, subdivision (c) and should have resulted in the suppression of his deposition testimony. He states that even though the deposition was ostensibly conducted in connection with a workers' compensation claim, the county counsel taking the deposition had information from the sheriff's department about the investigation, asked questions designed to elicit responses in connection with the investigation, and sought Shafer's signature on the deposition transcript before any hearing—an allegedly unusual request. Shafer argues that therefore, the county counsel was acting on behalf of the sheriff's department in connection with the deposition.[4] We conclude that the trial court's determination that the deposition testimony could be used should be affirmed.

Shafer initiated the workers' compensation proceeding. There is no contention that Shafer's deposition could not be taken during that proceeding. Ms. Davis of the county counsel's office, who deals exclusively with workers' compensation cases, represented the County of Los Angeles and took Shafer's deposition as part of that proceeding. It was taken at the office of Shafer's attorney, who was present during the deposition. Shafer alleges that "[a]ccording to Mr. Joe Carillo of Firm Solutions, the Department's insurance carrier, the purpose of the deposition is typically to seek information from the injured worker to determine if he is complying with work restrictions imposed by the doctor and/or to determine if the employee is leading a more active life than he is projecting." The report Shafer quotes goes on to state that Mr. Carillo added that "the deposition was an attempt to determine the nature and extent of his injury; type of injury (because he had amended his claim to include other injured parts) and to see the activity level he was or was not performing at. Information received during the deposition might lead to bringing the employee back to work."

Section 3303 provides that the interrogations covered by the Act are those conducted by the officer's "commanding officer, or any other member of the employing public safety department." Even assuming the deposition is an "interrogation," the county counsel's office or a member of that office does not come within the description in section 3303 of those conducting the interrogation. If the county counsel was acting "in concert" with the commanding officer or the sheriff's department, then perhaps she might be bound by the requirements of the Act. (See *California Correctional Peace*

---

[4]Shafer's argument suggests that had he received a warning before the deposition that he was under investigation by the sheriff's department, his answers may have differed.

*Officers Assn., supra,* 82 Cal.App.4th at p. 307.) In *California Correctional Peace Officers Assn.*, the California Department of Justice (DOJ) was investigating alleged criminal activity by correctional officers. The sole issue was the propriety of limits placed on the investigation by a preliminary injunction. The court held that the California Department of Corrections (CDC)—the "employing public safety department"—and the DOJ "must be considered to have been acting together in this investigation." (*Ibid.*) The CDC delivered interviewees to DOJ investigators and threatened those interviewees if they asserted rights during the DOJ interrogation. The CDC prevented their interviewees from leaving the premises until they had given their statements to the DOJ and guarded the interrogation rooms and surrounding areas.

Here, there is evidence that the relationship between the county counsel's workers' compensation activities and the sheriff's department's concerns were not comparable to those of the two agencies in *California Correctional Peace Officers Assn., supra,* 82 Cal.App.4th 294. The county counsel took the deposition in a workers' compensation proceeding—apparently on behalf of the county's insurance carrier. There was sufficient evidence to support the trial court's conclusion that the deposition was under the control of the county counsel's office and not the sheriff's department.

Shafer suggests that the deposition was, in effect, part of the prior impermissible June 29, 1999 interrogation that had been suppressed and therefore the deposition also should be suppressed. Section 3309.5, subdivision (c)(1) provides that when the superior court finds a violation of the Act, it "shall render *appropriate* injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer." (Italics added.) The "trial court has broad discretion in fashioning a remedy for a violation of the act. . . ." (*Williams v. City of Los Angeles* (1988) 47 Cal.3d 195, 204 [252 Cal.Rptr. 817, 763 P.2d 480] [an abuse of discretion to preclude the use of statements]; *City of Los Angeles v. Superior Court, supra,* 57 Cal.App.4th at p. 1516.)

It was up to the trial court to determine the "appropriate" remedy for the violation. It did so by suppressing the interrogation that it concluded did not comply with the Act. This satisfies any requirement that the remedy be a deterrent for future violations. The trial court's relief precluded the sheriff's department from taking "any punitive action" against Shafer as a result of the violation. The trial court was not required to suppress testimony given in

another proceeding, especially as Shafer was represented by counsel and was under oath. The trial court did not abuse its discretion by not suppressing the deposition testimony.[5]

Even if the deposition was the "fruit" of an earlier violation of the Act, as Shafer suggests, the trial court is not required to apply the principles applicable to constitutional violations in determining the appropriate remedy for statutory violations. (*Williams v. City of Los Angeles, supra,* 47 Cal.App.3d at p. 202.) In any event, referring to constitutional law by analogy would be unavailing to Shafer under existing authority because the "fruit of the poisonous tree" doctrine has been held not to require suppression of statements subject to noncoercive *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974] violations. (*People v. Brewer* (2000) 81 Cal.App.4th 442, 454 [96 Cal.Rptr.2d 786]; *People v. Whitfield* (1996) 46 Cal.App.4th 947, 955 [54 Cal.Rptr.2d 370].)

Accordingly, there was no violation of the Act in connection with the deposition.

*September 13, 2000 Interrogation*

Shafer contends that although the sheriff's department gave him the required information required by the Act prior to the September 13, 2000 interrogation, "[t]he entire interrogation regarding deposition testimony is the derivative fruit of the illegal October 19, 1999 interrogation/deposition; which itself is a derivative fruit of the prior and impermissible June 29, 1999 interrogation."

 ██ Here again, the trial court, by not suppressing the September 13, 2000 interrogation, did not consider such suppression to be an appropriate remedy for the violation in the June 29, 1999 interrogation.[6] As discussed above, the trial court had discretion not to suppress the September 13, 2000 interrogation, even if it was the "derivative fruit" of the June 29, 1999 interrogation. In view of the fact that the interrogation was preceded by the required advisements, Shafer was represented by counsel and the subject

---

[5]Because we determine that the trial court did not abuse its discretion, we need not address the sheriff's department's contention that under section 3303, subdivision (f)(1), a statement is admissible in a disciplinary or civil proceeding notwithstanding a violation of the Act. (See *City of Los Angeles v. Superior Court, supra,* 57 Cal.App.4th at p. 1517.)

[6]Although the judgment does not specifically refer to this interrogation, by not suppressing it, the trial court impliedly ruled it should not be suppressed. The judgment was submitted by Shafer. "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227].) Any deficiencies in the judgment have been waived. (*Id.* at pp. 1133-1134.)

matter that was addressed—the issue of Shafer's signing of the deposition—was unrelated to the June 29, 1999 interrogation, the trial court did not abuse its discretion in allowing evidence of the September 13, 2000 interrogation to be presented to the Commission.

### DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

Grignon, Acting P. J., and Armstrong, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 9, 2003. George, C. J., and Brown, J., did not participate therein.