[No. B160896. Second Dist., Div. Five. Dec. 8, 2003.]

ALHAMBRA POLICE OFFICERS ASSOCIATION et al., Plaintiffs and Appellants, v.
CITY OF ALHAMBRA POLICE DEPARTMENT et al., Defendants and Respondents.

1414

COUNSEL

Lackie & Dammeier, Dieter C. Dammeier and Michael A. Morguess for Plaintiffs and Appellants.

Joseph M. Montes, City Attorney; Burke, Williams & Sorensen, Timothy L. Davis and H. Esther Kim for Defendants and Respondents.

OPINION

MOSK, J.—Plaintiffs and appellants the Alhambra Police Officers Association (APOA) and Officer Robert Torrance (Torrance) (collectively appellants) appeal from a judgment denying their petition for writ of mandate seeking remedies for alleged violations of the Public Safety Officers Procedural Bill

of Rights Act (Gov. Code, § 3300 et seq.)[1] (the Act) by respondents the City of Alhambra Police Department and Larry Lewis, in his capacity as Chief of the Alhambra Police Department (collectively the APD). We hold that Torrance may not challenge the discipline to which he agreed as part of a negotiated settlement; that the Act was not applicable to a criminal investigation by an outside agency; and that Torrance could be disciplined for removing and returning evidence to an officer even if he was representing that officer. Therefore, we affirm the trial court's denial of the petition for writ of mandate.

## FACTUAL AND PROCEDURAL BACKGROUND

On approximately January 30, 2001, the APD received a citizen complaint alleging that APD Officer Benny Marquez (Marquez) had sexually assaulted her following a traffic stop. The APD commenced an "internal affairs" investigation and placed Marquez on administrative leave. The chief of the APD asked the Los Angeles County Sheriff's Department (Sheriff's Department) to conduct an independent criminal investigation of Marquez and suspended the APD internal affairs investigation of Marquez during the pendency of the outside investigation.

Marquez contacted fellow APD officer Robert Orozco (Orozco), who arranged a meeting for Marquez with Torrance, the vice-president of the APOA. The APOA is the employee organization that represents APD police officers. It provides representation to its members, who, under the Act, are entitled to such representation in connection with administrative investigations. (§ 3303, subd. (i).)

Marquez, Orozco, and Torrance met to discuss Marquez's suspension. At that time Marquez said he recalled that when he had been at the police station he threw away a piece of paper with a female driver's telephone number on it, and asked Orozco and Torrance to retrieve the piece of paper. Torrance retrieved the document from the wastebasket at the police station and gave it to Orozco to deliver to Marquez.

As part of its investigation, the Sheriff's Department conducted and recorded an interview of Torrance on March 14, 2001. The interviewers told Torrance that they were criminal investigators from the Sheriff's Department and that they were interviewing Torrance as a witness in their investigation of Marquez. The investigators reminded Torrance that the APD had a policy of cooperating with other agencies in criminal investigations but that Torrance was under no obligation to speak with them.

---

[1] All subsequent statutory references are to the Government Code.

Torrance told the Sheriff's Department investigators that Marquez initiated a meeting with him after being suspended. According to Torrance, Marquez said that the only reason he could think of for being suspended was a prior traffic stop with a female motorist, and Marquez described to Torrance his encounters with the woman, including kissing her. Torrance told the investigators that Marquez recalled throwing away a piece of paper containing the woman's phone number and was concerned because the fact that she wrote down her telephone number might be helpful to him. Torrance admitted retrieving the document at Marquez's request and giving it to Orozco for transmittal to Marquez.

After the Sheriff's Department investigation of Marquez had concluded, Torrance became the subject of an APD internal affairs investigation and was interrogated by the APD. At the interrogation Torrance's attorney asked for, but was refused, a transcript of the March 14, 2001 Sheriff's Department interview.

At the conclusion of the internal affairs investigation, the APD gave Torrance notice of a proposed disciplinary action—dismissal—based on four charges. The notice stated that by retrieving the slip of paper and causing it to be returned to Marquez, Torrance violated APD procedure when he did not "prepare and/or maintain" prescribed records (charge 1) and when he did not "book" the document into evidence (charge 4). The notice also contained the allegation that Torrance's failures to turn the paper over to his supervisors, to notify them that the paper existed and that Marquez had asked him to retrieve it, and to share his knowledge of facts pertaining to the investigation constituted a violation of the APD's rule against concealing pertinent information from supervisors (charge 2). The final allegation was that Torrance's conflicting answers in different interviews demonstrated that he had violated APD rules and regulations and its policy of truthfulness (charge 3).

Torrance exercised his right to an administrative appeal before the Alhambra police chief. At that hearing, Torrance, with counsel, was permitted to present evidence and to argue against the proposed discipline.

Following the administrative hearing, Torrance, through his counsel, negotiated and agreed to accept a final determination of discipline. Torrance agreed to be suspended from duty for 240 hours, placed on probation for six months, and subjected to a reduction in pay for 12 months. The agreement included findings that the four disciplinary charges were sustained, although charge 3 was sustained as to violations of APD rules rather than untruthfulness. As part of the final determination, Torrance acknowledged that the APD's findings in its internal affairs investigation of him were true, agreed to affirm in writing that his statements to Sheriff's Department investigators

were true, and "agree[d] with the discipline" imposed by the APD. Torrance also waived his right to appeal to the Alhambra Civil Service Commission.

Appellants then filed a petition for writ of mandate alleging that the March 14, 2001 Sheriff's Department interview of Torrance was an interrogation; that Torrance was denied his rights under the Act when his counsel was not permitted to review the record of the March 14, 2001 interview; and that Torrance could not be punished for his conduct while acting as Marquez's representative. Appellants requested that the trial court set aside Torrance's discipline, delete all references to the discipline from Torrance's personnel files, and permanently enjoin the APD from taking adverse action against APOA members for their conduct while acting in a representative capacity under the Act.

After a hearing, the trial court denied the petition for writ of mandate. The trial court ruled that Torrance was not entitled to protection under the Act for actions taken while acting as Marquez's representative because Marquez was under criminal investigation and the Act does not cover criminal investigations. The trial court further ruled that Torrance was not entitled to representation at the March 14, 2001 interview because it was conducted by the Sheriff's Department, not the APD. The trial court rejected appellants' claim that the Sheriff's Department was the APD's de facto agent or that it acted in concert with the APD when it interviewed Torrance. Torrance and the APOA appealed.

## DISCUSSION[2]

The Act "lists basic rights and protections afforded all peace officers by the public entities that employ them." (*Shafer v. County of Los Angeles Sheriff's Dept.* (2003) 106 Cal.App.4th 1388, 1396 [131 Cal.Rptr.2d 670] (*Shafer*).) When the Act has been violated, "the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer." (§ 3309.5, former subd. (c)(1), now subd. (d)(1).[3]) We requested supplemental briefing on the effect of Torrance's settlement of the administrative disciplinary proceedings on this litigation.

---

[2] The APD requests dismissal of the appeal because the appellants' opening brief contains insufficient citations to the record. We decline to dismiss the appeal on this ground.

[3] This subdivision has since been renumbered as subdivision (d)(1) without substantive change. (Stats. 2003, ch. 876, § 4.) For clarity we refer to this provision as section 3309.5, subdivision (c)(1), the designation in effect at all times relevant to this proceeding.

The APD argues that the petition for writ of mandate is barred by Torrance's settlement of the disciplinary proceedings. Torrance and the APOA argue that the disciplinary settlement does not limit the relief available under the Act. Alternatively, appellants maintain that an injunction against future violations of the Act is available even if the settlement precludes judicial intervention to overturn the discipline.

We consider de novo whether the Act applies. Our review of any factual findings by the trial court "is based on the substantial evidence standard of appellate review applied to trial court decisions in administrative cases." (*Shafer, supra,* 106 Cal.App.4th at p. 1396.) We conclude that Torrance may not overturn by writ of mandate the discipline to which he agreed. As to the remaining relief requested in appellants' petition for writ of mandate, we need not decide whether in all circumstances the settlement of disciplinary proceedings and acceptance of discipline precludes subsequent injunctive relief for violations of the Act allegedly committed during the investigative and disciplinary proceedings that culminated in the settlement. Regardless of whether such injunctive relief is available, it was not warranted here because appellants failed to establish that the APD violated the Act.

I. *Torrance may not challenge the discipline to which he agreed.*

After his administrative appeal hearing, Torrance—facing a recommended dismissal from the APD—negotiated a settlement by which he received less severe punishment in exchange for admitting misconduct, "agree[ing] with the discipline set forth," and waiving his right to appeal the discipline to the Alhambra Civil Service Commission. Once Torrance had avoided the most extreme punishment of losing his job, appellants filed this petition seeking to nullify the discipline Torrance had accepted, to purge Torrance's records of references to the discipline, and to enjoin the APD from disciplining officers under similar circumstances in the future.

Torrance may not overturn the discipline to which he agreed by filing a petition for writ of mandate. (*Zazueta v. County of San Benito* (1995) 38 Cal.App.4th 106, 110 [44 Cal.Rptr.2d 678] [officer who agreed to arbitration of disciplinary proceedings may not obtain judicial review of his termination through petition for writ of mandate]; see also *Stermer v. Board of Dental Examiners* (2002) 95 Cal.App.4th 128, 133–134, 135–136 [115 Cal.Rptr.2d 294] (*Stermer*).)

██ Settlements of disciplinary proceedings are binding in the absence of a showing of fraud, mistake, undue influence, or duress—none of which has been alleged or proven here. (See *Stermer, supra,* 95 Cal.App.4th at p. 133.) In *Stermer,* we held that one who resolves disciplinary proceedings through a

stipulated settlement may not invalidate the agreed-upon discipline, even if the underlying convictions that gave rise to the proceedings are subsequently vacated. (*Id.* at pp. 133–134, 135–136.) We wrote, "[b]y [settling], he avoided the hearing, the allegations of drug use, and the possibility of a more severe penalty. Stipulations in administrative proceedings would not serve the purpose for which they are intended if they were voidable at the option of the licensee based on changes of circumstances or challenges to factual recitals." (*Id.* at pp. 133–134.) ■ Similarly here, Torrance avoided the risk of a more severe penalty—dismissal—by settling and accepting lesser discipline. He may not, through an action under the Act, avoid the discipline to which he consented.

## II.  *The trial court properly denied the writ of mandate.*

■ To the extent that injunctive relief may be available to remedy violations of the Act allegedly committed by the APD during the investigative and disciplinary proceedings that led to the stipulated discipline of Torrance, the trial court properly denied injunctive relief because appellants did not establish that the APD violated the Act. (§ 3309.5, subd. (c)(1) ["where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer"].)

### A.  *The Act did not apply.*

On March 14, 2001, Sheriff's Department investigators interviewed Torrance as part of that agency's criminal investigation of Marquez. Although appellants claim the APD violated section 3303, subdivisions (g) and (i) when Torrance was not advised that he could be represented during the interview or that he could record it and when he was later denied a transcript or tape of the interview, the Act did not apply to the interview.[4]

■ By its own terms section 3303 does not apply when an officer is interviewed by an outside agency in the course of that agency's criminal investigation of another officer. ■ (§ 3303 [protections apply when officer "is under investigation and subjected to interrogation by his or her commanding officer, or any other member of the employing public safety

---

[4] Section 3303, subdivision (g) concerns recording of and access to recordings of interrogations, and section 3303, subdivision (i) deals with the right to representation.

department"]; ■ § 3303, subd. (i) [representative's right not to disclose information received by another officer extends only to "information received from the officer under investigation for noncriminal matters"].) The evidence supports the trial court's findings that the March 14, 2001 interview of Torrance was part of an independent criminal investigation of Marquez conducted by the Sheriff's Department and that the Sheriff's Department was not a de facto agent of the APD. Contrary to appellants' contentions, the evidence presented to the trial court did not establish that the Sheriff's Department was acting in concert with the APD or under APD control when it interviewed Torrance in the course of its investigation of Marquez. (*Shafer*, *supra*, 106 Cal.App.4th at p. 1400; *California Correctional Peace Officers Assn. v. State of California* (2000) 82 Cal.App.4th 294, 307 [98 Cal.Rptr.2d 302].)

Because the interview of Torrance was conducted by an outside agency in its criminal investigation of another officer, the Act did not apply. Thus, the trial court properly denied the writ of mandate on the ground that no violation of the Act had been established.

B.   *Torrance is not immune from discipline even if he acted as a representative.*

Appellants contend that the Act bars the APD from disciplining Torrance for his conduct while he was acting as the representative of an officer who was under investigation. Section 3303, subdivision (i) provides that a "representative shall not be required to disclose, nor be subject to any punitive action for refusing to disclose, any information received from the officer under investigation for noncriminal matters." This section, expressly limited to noncriminal investigations, does not apply here, because the evidence established that Marquez was under investigation for a criminal act. Even if the section were applicable—and even if Torrance were acting as Marquez's representative—section 3303 would not immunize Torrance from discipline for his conduct.

■   The representation rights established by section 3303, subdivision (i) are not unlimited. (*Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1309 [4 Cal.Rptr.3d 629].) Whatever representative privilege may be created by the Act, it does not supplant an officer's official duties. Law enforcement officers "are the guardians of the peace and security of the community, and the efficiency of our whole system, designed for the purpose of maintaining law and order, depends upon the extent to which such officers perform their duties and are faithful to the trust reposed in them. Among the duties of police officers are those of preventing the commission of crime, of assisting in its detection, and of disclosing all information known to

them which may lead to the apprehension and punishment of those who have transgressed our laws. . . . [I]t is a violation of said duties for any police officer to refuse to disclose pertinent facts within his knowledge. [Citation.]" (*Titus v. Civil Service Com.* (1982) 130 Cal.App.3d 357, 364 [181 Cal.Rptr. 699] (*Titus*).) ■ Although section 3303, subdivision (i) creates a limited exception to these general duties for information obtained by one officer representing another in a noncriminal matter, the statute may not reasonably be interpreted as authorizing an officer to locate and remove documentary evidence pertaining to the misconduct investigation of another officer and then to return the evidence to the officer accused of misconduct—in admitted contravention of department rules and procedures—even if the officer is acting as the other's representative.

■ Torrance analogizes the Act's representative privilege to the attorney-client privilege, but the attorney-client privilege does not permit attorneys to disturb evidence without disclosing its original location and condition, nor may they turn over physical evidence to their clients rather than to the police or prosecution. (*People v. Superior Court (Fairbank)* (1987) 192 Cal.App.3d 32, 39–40 [237 Cal.Rptr. 158] ["If counsel or an agent of counsel chooses to remove, possess, or alter physical evidence pertaining to the crime, counsel must immediately inform the court of the action"]; *People v. Lee* (1970) 3 Cal.App.3d 514, 526 [83 Cal.Rptr. 715] [defense counsel has no right to withhold evidence from the state by asserting attorney-client privilege]; *Clutchette v. Rushen* (9th Cir. 1985) 770 F.2d 1469, 1472 ["California law requires that a defense attorney must, after a reasonable time, turn evidence taken from its original resting place over to the prosecution"]; *People v. Meredith* (1981) 29 Cal.3d 682, 695 [175 Cal.Rptr. 612, 631 P.2d 46] [attorney-client privilege does not protect defense counsel who removes or alters evidence from divulging its original location and condition]; see *People v. Fairbank* (1997) 16 Cal.4th 1223, 1240 [69 Cal.Rptr.2d 784, 947 P.2d 1321].)

"[C]ourts commonly *require* lawyers to make voluntary disclosure with respect to the fruits, instrumentalities, and physical evidence of their clients' crimes. [¶] The cases asserting this duty all begin with the premise that a lawyer may not actively participate in hiding an item and may not take possession of it in such a way that its discovery by the authorities becomes less likely. . . . [¶] . . . Not only must a lawyer not make the police officer's job tougher, statutory prohibitions against destroying, altering, or concealing evidence mean that a lawyer must in effect make the police officer's job *easier*, by voluntarily turning over physical evidence that has come into the possession of the lawyer." (1 Hazard & Hodes, The Law of Lawyering (3d ed. 2000) § 9.29, p. 9-103; cf. Pen. Code, § 135 [criminal penalties for spoliation of documentary evidence]; Rules Prof. Conduct, rule 5-220.)

Torrance's analogy between the attorney-client privilege and the nondisclosure privilege of section 3303, subdivision (i) is also unavailing because even if Torrance were an attorney as well as a police officer, the attorney-client privilege would not allow him to disregard his official duties as a law enforcement officer. As one court has explained, "appellant was not free to breach his duties as a law enforcement officer and retain his employment. . . . Having selected the loyalties attendant upon the private practice of law over fidelity to the trust reposed in him as a law enforcement officer, appellant will not now be heard to complain of the inevitable result." (*Titus, supra,* 130 Cal.App.3d at p. 365 [upholding termination of deputy sheriff who was also an attorney after he refused to disclose to the sheriff's department pertinent information received from a client].) Although the circumstances of this case differ from those in *Titus,* the court's observation that "society does not engage its peace officers on the basis of divided loyalties" (*id.* at p. 364) is equally applicable here. (See § 24004.5 [deputy sheriff qualified to practice law may represent person except in a criminal matter or "in any matter concerning an event or transaction if the deputy has performed or has reason to know he or she will perform any act relating to such event or transaction in the performance of his or her duties, or in any manner adverse to his or her employing agency"].)[5]

We recognize that an officer acting as a representative may face difficult choices when it is unclear whether an investigation is criminal or administrative. Torrance contends he was unaware that Marquez was under investigation for a criminal matter when he, Torrance, engaged in the conduct at issue here, but the Act provides for no defense based on such lack of knowledge. This may present dilemmas in certain situations, but that is a matter for the Legislature to address. In any event, Torrance's conduct here—removing evidence pertinent to an ongoing investigation and returning it to the officer under investigation—extends far beyond any statutorily conferred privilege not to disclose information divulged by the officer being investigated. (§ 3303, subd. (i).) The trial court properly denied injunctive relief because the APD did not violate the Act.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs, if any, on appeal.

Turner, P. J., and Grignon, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 30, 2004.

---

[5] "While loyalty and support are salutary and even necessary qualities, they cannot justify the violation of an officer's public responsibility to ensure compliance with the law . . . ." (Rep. of Independent Com. on the Los Angeles Police Dept. (Christopher Commission) (1991) at p. 168.)