Filed 1/28/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOHN ELLINS, | B261968 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS142699) |
| v. | |
| CITY OF SIERRA MADRE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert H. O'Brien, Judge.  Affirmed.

Michael A. Morguess for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Laura J. Kalty and Danny Y. Yoo, for Defendant and Respondent.

\* \* \* \* \* \*

The Police Officer's Bill of Rights (POBRA) provides that a "public safety officer under investigation" by his or her "employing public safety department[] that could lead to punitive action" "shall be informed of the nature of the investigation *prior to* any interrogation." (Gov. Code, § 3303, subd. (c), italics added.)[1] We now confront the question: How *much* "prior to" any interrogation must the officer be given that information? We conclude that a public safety officer must be informed of the "nature of the investigation" reasonably prior to any interrogation. Notice is "reasonably prior to" an interrogation if it grants the officer sufficient time to meaningfully consult with any "representative" he or she elects to have present during the interview, although the employing department may postpone disclosure until the scheduled time of the interview—and briefly postpone the commencement of the interview to allow time for consultation—if it has reason to believe that earlier disclosure would jeopardize the safety of any interested parties or the integrity of evidence under the officer's control. Because the undisputed facts indicate that the officer in this case had sufficient time to meaningfully consult with his representative, we affirm the trial court's order denying the officer's writ petition seeking to overturn his dismissal due in part to his insubordination in refusing to submit to an interrogation.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff-appellant John Ellins (Ellins) joined the City of Sierra Madre Police Department (Department) in 1999. As a peace officer, Ellins had access to the "CLETS database." CLETS is short for "California Law Enforcement Telecommunications System"; the CLETS database "is a confidential law enforcement database that allows police officers to access [several integrated databases containing] an individual's criminal history, as well as driver's license and vehicle registration information." (*Richardson v. City & County of San Francisco Police Com.* (2013) 214 Cal.App.4th 671, 674, fn. 1.) When Ellins joined the Department, he was informed that use of the CLETS database for

---

[1]     Unless otherwise indicated, all further statutory references are to the Government Code.

any reason other than official business was improper and grounds for immediate dismissal.

In May 2010, Ellins made 12 inquiries of the CLETS database, which accessed 43 different subdatabases. The subject of the inquiries was Ellins' ex-girlfriend and members of her family. Ellins had no official reason to make those inquiries.

In the summer of 2010, the Department opened an investigation into Ellins' use of the CLETS database after receiving a letter from the ex-girlfriend, who reported that Ellins told her he had tracked her down in New York with information from the database. The Department hired an outside consultant to run the investigation.

In September 2010, the Department formally notified Ellins that "[a]n administrative investigation is currently being conducted regarding an alleged abuse of your peace officer powers and duties." The notice provided no further details on the nature of that alleged abuse. Ellins retained an attorney as his representative.

After a few minor scheduling delays, the consultant, Ellins, and his counsel agreed that the consultant would interview Ellins on October 13, 2010. Just minutes before the interview was to begin, the consultant notified Ellins—orally and in writing—that he was alleged "in May 2010 [to have] inappropriately accessed the [CLETS database] and made numerous inquiries regarding [his] former girlfriend . . . and her relatives." The consultant then gave Ellins and his representative an hour to discuss the charges in private before commencing the interview; this was the amount of time Ellins' representative had requested. However, after 25 minutes, Ellins told the consultant he refused to participate in the interview on the advice of his representative. Ellins' commanding officer appeared and directly ordered Ellins to sit for the interview; Ellins still refused.

The Department rescheduled the interview three more times (on October 14, 2010; November 15, 2010; and November 16, 2010), but Ellins did not appear for medical reasons. In December 2010, the Department issued Ellins a Notice of Intent to Terminate him on three independent grounds: (1) making unauthorized searches of the CLETS database; (2) engaging in insubordination on October 13, 2010 by disobeying his

3

commanding officer's direct order to submit to an interrogation; and (3) engaging in insubordination on October 14, 2010 by disobeying his commanding officer's direct order to submit to an interrogation. The Department terminated him in February 2011.

Ellins appealed his termination to a hearing officer. In December 2012, the hearing officer sustained the termination order. The officer concluded that sufficient evidence supported the Department's findings that Ellins had accessed the CLETS database without authorization and was insubordinate for not submitting to the October 13, 2010 interview. The officer did not affirm the Department's second finding of insubordination for refusal to submit to the October 14, 2010 interview because Ellins arguably had a medical excuse. The officer affirmed the penalty of dismissal after weighing Ellins' service record against its current findings of misconduct and two prior findings of misconduct.

In January 2013, the City of Sierra Madre adopted the hearing officer's opinion as its own.

Ellins petitioned the Los Angeles County Superior Court for a writ of mandate to overturn his dismissal. In addition to arguing the insufficiency of the evidence and raising constitutional challenges, Ellins challenged the timing of the Department's notice of the nature of the investigation under section 3303, subdivision (c).

In November 2014, the trial court denied Ellins' petition. After independently reviewing the administrative record, the court found sufficient evidence to sustain the city's findings of unauthorized access to the CLETS database and insubordination on October 13, 2010. The court also rejected Ellins' section 3303, subdivision (c)-based challenge. The court reasoned that the statute "merely states that notice" "of the specific charges against [an officer]" "must be given 'prior to' any interrogation" and noted that Ellins had "failed to direct the [c]ourt to any authority that establishes how long before an interrogation" that notice must be given.

Following the trial court's entry of judgment, Ellins timely appealed.

4

Ellins' sole contention on appeal is that his termination for insubordination is invalid because he had a valid reason for refusing to submit to the October 13, 2010 interrogation—namely, that the Department violated POBRA by not properly advising him of the nature of the investigation "prior to" his interrogation. The validity of this claim turns on two questions: (1) what does section 3303, subdivision (c) mean when it requires an employing department to inform a public safety officer of the nature of the investigation "prior to" any interrogation; and (2) did the Department in this case satisfy that standard? The first question is one of statutory interpretation, and the second is one of sufficiency of the evidence; we review the first de novo (*Shafer v. Los Angeles County Sheriff's Department* (2003) 106 Cal.App.4th 1388, 1396), and the second for substantial evidence if the facts are disputed and de novo if the facts are undisputed (*Westchester Secondary Charter School v. Los Angeles Unified School Dist.* (2015) 237 Cal.App.4th 1226, 1236).

## I. Meaning of section 3303, subdivision (c)

POBRA "provides procedural guarantees to public safety officers under investigation" by their employers. (*City of Los Angeles v. Superior Court* (1997) 57 Cal.App.4th 1506, 1512 (*City of Los Angeles*).) Section 3303 sets forth an officer's rights when he or she is "subjected to interrogation by his or her commanding officer[] or any other member of the employing public safety department[] that could lead to punitive action." (§ 3303.) (These rights do not attach to questioning "in the normal course of duty, counseling, instruction, or informal verbal admonishment by, or other routine or unplanned contact with, a supervisor." [*Id.*, subd. (i).]) These rights include the right to have any interrogation conducted at a "reasonable hour," for a "reasonable period," and in a nonoffensive manner (*id.*, subds. (a), (d) & (e)); the right to know who will be conducting the interrogation and who will be present (*id.*, subd. (b)); the right to have a "representative of [the officer's] choice" present (*id.*, subd. (i)); and the right to record the interrogation or obtain any recording made by the interrogator (*id.*, subd. (g)). Section 3303, subdivision (c) spells out the right at issue in this case: "The public safety

officer under investigation shall be informed of the nature of the investigation prior to any interrogation." (§ 3303, subd. (c).)

In this appeal, we decide how much "prior to" the interrogation the public safety officer must be informed of the nature of the investigation. The statute itself is silent on this point, and the only other decision to touch upon the issue—*Hinrichs v. County of Orange* (2004) 125 Cal.App.4th 921—did not resolve it. (*Id.* at p. 926.) The Department argues that as long as notice temporally precedes the interrogation, even if by mere minutes, it is "prior to" the interrogation and hence sufficient. Ellins seems to suggest that at least one day's and up to five days' advance notice is required. We reject both views.

Instead, we hold that section 3303, subdivision (c), requires an officer to be informed of the nature of the investigation "reasonably prior to" the interrogation—that is, with enough time for the officer to meaningfully consult with any representative he elects to have present. The time necessary to do so may depend upon whether the officer has already retained a representative (or instead needs time to secure one) and upon the nature of the allegations; their complexity; and, if they are unrelated, their number. However, an employing department with reason to believe that providing this information might risk the safety of interested parties or the integrity of evidence in the officer's control may delay the notice until the time scheduled for interrogation as long as it thereafter grants sufficient time for consultation. We reach this conclusion for four reasons.

First, a requirement of reasonable advance notice is contemplated by language in other subdivisions of section 3303. As noted above, section 3303, subdivision (i), grants a public safety officer the "the right to be represented by a representative of his or her choice who may be present at all times during the interrogation" if that interrogation follows the filing of formal written charges or "focuses on matters that are likely to result in punitive action." (§ 3303, subd. (i).) But that right is not unlimited: "The representative shall not be a person subject to the same investigation." (*Ibid.*) The only way an officer can assess whether his or her chosen representative is "subject to the same

6

investigation"—and, to a lesser extent, whether the interrogation is "likely to result in punitive action"—is if he or she *knows* the nature of the investigation. If departments may withhold this information until the last minute, interrogations will routinely need to be postponed at the last minute whenever that information reveals for the first time that the interrogation is "likely to result in punitive action" or that the officer's chosen representative is implicated in the investigation. Such delays are at odds with one of POBRA's purposes—namely, to provide for "prompt investigations of allegations of officer misconduct." (*Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1305 (*Upland Police Officers Assn.*).) Because we are required to read a statute's provisions "as a whole" and to "harmoniz[e] 'statutes or statutory sections relating to the same subject . . . both . . . internally and with each other, to the extent possible'" (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 575 (*Pasadena Police Officers Assn.*), quoting *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387), and to avoid interpretations leading to absurd results (*Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 630), we are disinclined to construe subdivision (c) in a manner that causes mischief under subdivision (i).

Second, a requirement of reasonable advance notice is more consistent with the legislative purpose behind POBRA. (*People v. Harrison* (2013) 57 Cal.4th 1211, 1221-1222 [statutory construction looks to ""ostensible objects to be achieved, the evils to be remedied [and] public policy""].) As our Supreme Court has noted, POBRA's "procedural protections" reflect a "balanc[e] of competing interests"—namely, the "public interest in maintaining the efficiency and integrity of its police force" (through "prompt, thorough, and fair investigation[s]") and the "personal interest" of the "officer under investigation" "in receiving fair treatment." (*Pasadena Police Officers Assn.*, *supra*, 51 Cal.3d at pp. 570, 568, 572; *City of Los Angeles*, *supra*, 57 Cal.App.4th at p. 1512.) Although the disclosure of *discovery* regarding misconduct in advance of an interrogation might "frustrate the effectiveness of any investigation" by "color[ing] the recollection of the person to be questioned or lead[ing] that person to confirm his or her

7

version of an event to that given by witnesses" whose statements have been disclosed in discovery (*Pasadena Police Officers Assn.*, at pp. 578-579), advanced disclosure of *the nature of the investigation* has the opposite effect:  It allows the officer and his or her representative to be "well-positioned to aid in a full and cogent presentation of the [officer's] view of the matter, bringing to light justifications, explanations, extenuating circumstances, and other mitigating factors" and removes the incentive for "uninformed representatives . . . to obstruct the interrogation 'as a precautionary means of protecting employees from unknown possibilities.'  [Citation.]" (*United States Postal Service v. NLRB* (D.C. Cir. 1992) 969 F.2d 1064, 1071.)  Thus, advance disclosure of the nature of the investigation serves *both* purposes of POBRA by contributing to the efficiency and thoroughness of the investigation while also safeguarding the officer's personal interest in fair treatment.

Third, a requirement of reasonable advance notice tracks the two models our Legislature used when fashioning POBRA's protections—the rights accorded to employees under labor relations law and the rights accorded to suspects under criminal investigation.

POBRA was designed in part to "'secure stable employer-employee relations'" (*Upland Police Officers Assn.*, *supra*, 111 Cal.App.4th at p. 1302; *Pasadena Police Officers Assn.*, *supra*, 51 Cal.3d at p. 572; *Baggett v. Gates* (1982) 32 Cal.3d 128, 135), and was "modeled on section 7 of the National Labor Relations Act [NLRA] (29 U.S.C. § 157)" (*Upland Police Officers Assn.*, at p. 1308).  Cases interpreting section 7 of the NLRA are accordingly "persuasive authority" when construing POBRA.  (*Ibid.*) Paralleling an officer's right to the presence of a representative under section 3303, subdivision (i), section 7 of the NLRA guarantees an employee the right to "have the assistance of [a] union representative at a confrontation with his employer."  (*NLRB v. J. Weingarten, Inc.* (1975) 420 U.S. 251, 260.)  This right is vindicated only if the employer "first inform[s] the employee[] of the subject matter of the interviews and allow[s] [him] time for a pre-interview conference with a union representative."  (*Pacific Tel. & Tel. Co. v. NLRB* (9th Cir. 1983) 711 F.2d 134, 135.)  "Without such information and such

8

conference, the ability of the union representative effectively to give the aid and protection sought by the employee would be seriously diminished." (*Id.* at p. 137.) Although not binding, this precedent strongly suggests that section 3303, subdivision (c) should be construed in a similar fashion—that is, to require notice of the subject matter (that is, the nature) of the investigation sufficiently in advance of any interrogation to give an officer time to meaningfully consult with his representative on that topic.

POBRA's procedural protections also mirror those granted to criminal defendants, although an employing agency has "greater latitude . . . than would be constitutionally permissible in a criminal investigation." (See *Pasadena Police Officers Assn.*, *supra*, 51 Cal.3d at p. 577; see also *ibid.* ["some of the rights that the Act affords peace officers resemble those available in a criminal investigation"]; *San Diego Police Officers Assn. v. City of San Diego* (2002) 98 Cal.App.4th 779, 784-785 [looking to discovery rights of criminal defendants to define discovery rights under POBRA]; *Upland Police Officers Assn.*, *supra*, 111 Cal.App.4th at pp. 1308-1309 [looking to criminal defendants' right to counsel to define right to representative under POBRA]; accord, § 3303, subd. (h) [requiring officer to be advised of his "constitutional rights" if he may be charged with a criminal offense]; *Lybarger v. City of Los Angeles* (1985) 40 Cal.3d 822, 829 [so noting].) The United States Supreme Court has recognized that a criminal defendant has "a constitutional right to discuss" his case "with his lawyer" and an "has an absolute right to . . . consult[] [with his attorney] before he begins to testify." (*Perry v. Leeke* (1989) 488 U.S. 272, 281, 284.) This right to consult may be abridged only during brief recesses while the defendant is testifying (*id.* at pp. 280-281); otherwise, his right to consult with his lawyer controls (*Geders v. United States* (1976) 425 U.S. 80, 91). Although not binding, this precedent also strongly suggests that an officer's right to representation carries with it a right to meaningfully consult with that representative prior to any interrogation.

Fourth and finally, a requirement of reasonable advance notice is consistent with precedent that has similarly "infus[ed] a reasonableness requirement" into subdivision (i) of section 3303. (*Upland Police Officers Assn.*, *supra*, 111 Cal.App.4th at p. 1305.) In

9

*Upland Police Officers Assn.*, the court concluded that an officer's right under POBRA to select a "representative of his or her choice" did not include the right to "prevent any interrogation by simply choosing a representative who would never be available"; such a literal reading, the court reasoned, would defeat the "legislative intent to protect the officer during interrogations without eliminating the ability of [a] [d]epartment to carry out prompt and timely investigations of its own officers." (*Id.* at pp. 1305-1306.) Instead, the court read POBRA's guarantee to "include a reasonableness requirement" that conferred a more limited right to "choose a representative who is reasonably available to represent the officer, and who is physically able to represent the officer at [a] reasonably scheduled interrogation." (*Id.* at pp. 1297, 1306.) Relatedly, the court in *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2008) 166 Cal.App.4th 1625 held that an officer's right to a representative of his own choosing did not extend to having several officers with the same lawyer "huddle" collectively and thereby align their accounts of what happened; the ability to confer one-on-one with the representative was sufficient. (*Id.* at p. 1637.) Requiring an employing department to inform an officer of the nature of the charges "reasonably prior to" an interrogation infuses a similar reasonableness requirement into subdivision (c) of section 3303. However, this reasonableness requirement must account for the possibility that early disclosure of an investigation's subject matter can lead to possible danger to individuals who are victims or otherwise implicated in the investigation and/or lead to the possible destruction of evidence within the officer's control. Thus, just as Penal Code section 1054.7 provides that such dangers constitute good cause to delay discovery in criminal prosecutions, an employing agency with reason to believe disclosure may lead to these concerns may reasonably postpone disclosure of the subject matter of an investigation until the scheduled time for the interview and thereafter allow a brief postponement to allow the officer to consult with his or her representative.

The Department offers two arguments in favor of its literal "'prior to' means 'prior to,' even *immediately* 'prior to'" argument. First, it argues that we should consider the meaning of subdivision (c) in isolation, and without regard to its effect on the right to

10

representation contained in subdivision (i) of section 3303.  But this contradicts the duty of courts, in construing statutes, "'not to construe statutes in isolation, but rather [to] read every statute "with reference to the entire scheme of law of which it is a part so that the whole may be harmonized and retain effectiveness." [Citation.]'" (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276.)

Second, the Department argues that our Legislature's decision, in 1994, to amend other subdivisions of section 3303 but not to amend subdivision (c) means that the Legislature has implicitly rejected anything but a literal interpretation of subdivision (c). We are unpersuaded.  At best, "legislative inaction [may] signal[] acquiescence when there exists both a well-developed body of law interpreting a statutory provision and numerous amendments to a statute without altering the interpreted provision." (*Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1156.)  But even then, it is a "slim reed upon which to lean." (*Quinn v. State of California* (1975) 15 Cal.3d 162, 175; *In re Marriage of Davis* (2015) 61 Cal.4th 846, 863 ["legislative inaction after a judicial decision does not necessarily imply legislative approval" or acquiescence in that decision].)  Where, as here, there is no intervening judicial interpretation of section 3303, subdivision (c), legislative inaction regarding that section means nothing.

## II.    Compliance with section 3303, subdivision (c)

On the undisputed facts presented in this case, we conclude that the Department provided Ellins with notice of the nature of the investigation "reasonably prior to" his interrogation.  The letter the Department received from Ellins' former girlfriend indicating Ellins' efforts to track her down without her consent provided good cause to postpone disclosure of the nature of the investigation until the commencement of the interrogation to avoid any possibility of retaliation against her.  Moreover, once the consultant disclosed the nature of the investigation, he granted Ellins and his representative the time they had requested to confer.  They did not use all of this time, and instead elected to press the statutory argument before us on appeal.  The sole allegation at issue here was straight-forward legally and factually:  Did Ellins have any official reason to be running searches in the CLETS database on his ex-girlfriend and her

11

family?  The time Ellins had was sufficient to allow for meaningful consultation as to that allegation.  Because Ellins was informed reasonably prior to the interrogation, he had no justification for his insubordination on October 13, 2010.

In light of this conclusion, we have no occasion to reach the Department's alternative argument that Ellins' termination independently rests on his unauthorized access of the CLETS database.

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.

## CERTIFIED FOR PUBLICATION.

_____, J.
HOFFSTADT

We concur:

_____, P.J.
BOREN

_____, J.
CHAVEZ