[No. B194395. Second Dist., Div. Six. Dec. 26, 2007.]

MICHAEL CHAD VAN WINKLE, Plaintiff and Appellant, v.
COUNTY OF VENTURA et al., Defendants and Appellants.

494

COUNSEL

Adams, Ferrone & Ferrone and Stuart D. Adams for Plaintiff and Appellant.

Noel A. Klebaum, County Counsel, and Thomas W. Temple, Assistant County Counsel, for Defendants and Appellants.

Jones & Mayer, Martin J. Mayer and Krista MacNevin Jee as Amicus Curiae on behalf of Defendants and Appellants.

OPINION

GILBERT, P. J.—POBRA is the acronym for the Public Safety Officers Procedural Bill of Rights Act. (Gov. Code, § 3300 et seq.; hereafter also referred to as Act.)[1] It provides certain protections for law enforcement officers who are the subjects of administrative investigations.

Here we hold these protections do not apply to officers subject to criminal investigations conducted by their employers.

Defendants County of Ventura, the Ventura County Sheriff's Department and Sheriff Bob Brooks (collectively the County) appeal an injunction which

---

[1] All statutory references are to the Government Code.

prevents them from using certain statements made by plaintiff Michael Chad Van Winkle, during a criminal investigation, at his civil service hearing. Van Winkle, a former deputy sheriff, made these statements after he was arrested for embezzling property from the sheriff's department and after waiving his *Miranda* rights. (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602] (*Miranda*).) He challenged his termination and brought an action under POBRA for injunctive relief claiming, among other things, that statements he made during a criminal investigation must be suppressed in his civil service hearing because the County violated his rights under POBRA.

█ Van Winkle appeals and contends the trial court erred because it only enjoined the County from using statements made during an in-custody criminal interrogation. He claims the County may not use statements he made during a sting operation. We conclude that POBRA does not apply to the sting operation. Nor does it apply to the in-custody criminal interrogation. We reverse and vacate the injunction.

## FACTS

In 2005, the Ventura County Sheriff's Department's internal affairs unit (IAU) investigated a citizen complaint against Van Winkle. The complaint alleged he was having "an extramarital affair while on duty."

Sheriff's Commander Chris Godfrey, who supervised the IAU, had evidence that Van Winkle committed a criminal offense, embezzlement of firearms. Because the IAU did not have authority to conduct criminal investigations, Godfrey referred this matter to the Ventura County Sheriff's Department's major crimes bureau (MCB). Pursuant to department policy, IAU stopped its investigation pending the outcome of the criminal investigation.

Ventura County Sheriff's Commander David Tennessen supervised the MCB. The MCB conducts criminal investigations. It has no "authority to conduct administrative investigations or to make recommendations regarding discipline against a Sheriff's Department employee." Tennessen declared that the IAU had no "input into the conduct of the criminal investigation into . . . Van Winkle's crimes." Melissa Smith, an MCB detective, declared that after the completion of their criminal investigation the matter was referred to the district attorney's office.

During its investigation, the MCB learned that Van Winkle and another deputy, Lester Tunigold, had received weapons which were required to be destroyed by the department. They discussed a plan to keep the weapons "without booking them for destruction."

The MCB conducted a sting operation. Heather H., a civilian, met with Tunigold and Van Winkle to turn in a gun for destruction. Van Winkle asked her "would you be willing to take a donation for it or something in that scenario to one of us?"

MCB next conducted a pretext call. Tunigold cooperated with the department and made a recorded telephone call to Van Winkle to ask him about weapons which had been stored at the station for destruction. MCB had discovered that Van Winkle had removed them and taken them home. During the phone conversation, Van Winkle said he had completed the paperwork to show that those weapons were properly booked.

Van Winkle was arrested and interviewed by an MCB detective who advised him, "This is a criminal matter, it's not [an] administrative matter so I can't order you to speak." After waiving his *Miranda* rights, Van Winkle admitted he took home one of the guns which had been brought to the station for destruction. The district attorney's office declined to prosecute Van Winkle.

The sheriff's department fired Van Winkle. He filed an administrative appeal of that decision. He also filed a superior court petition for injunctive relief (§ 3309.5) alleging that the County had violated POBRA by: (1) obtaining statements from him during the criminal investigation without first giving him the advisements required by that Act (§ 3303); and (2) by attempting to use statements he made during the criminal investigation to support the decision to fire him. He sought to enjoin the County from taking any disciplinary action against him or from using statements he made during the criminal investigation in his civil service hearing.

The County claimed that Van Winkle's statements were admissible in his administrative appeal. It submitted the declarations of Godfrey, Tennessen and Smith, all of whom declared that Van Winkle made his statements during an independent criminal investigation which was not covered by POBRA.

The trial court found the sting operation and the pretext call were not interrogations within the meaning of POBRA section 3303.[2] But the September 2, 2005, custodial interview was an interrogation in a criminal investigation. The court ruled the language of POBRA (§ 3303, subd. (i)) does not cover criminal investigations. But it was required to grant Van Winkle relief

---

[2] It is odd for a trial court to decide in advance of a civil service hearing what evidence should be admissible. We are quite sure the hearing officer is quite capable of making that determination. But POBRA allows for such determination. (§ 3309.5.) In our view, it is better practice to review evidentiary questions after the hearing has taken place than to make rulings on anticipated evidentiary matters.

based on dicta in *California Correctional Peace Officers Assn. v. State of California* (2000) 82 Cal.App.4th 294, 309 [98 Cal.Rptr.2d 302] (*CCPOA*), stating that criminal investigations of law enforcement officers by their employers fall within POBRA. It enjoined the County from using the responses Van Winkle made in the custodial interrogation in any administrative proceeding, except for impeachment purposes.

## DISCUSSION

### *Does POBRA Apply?*

The County contends the injunction must be reversed because POBRA does not apply. We agree.

POBRA provides that "[w]hen any public safety officer is under investigation and subjected to interrogation by his or her commanding officer, or any other member of the employing public safety department, that could lead to punitive action, the interrogation" must include certain safeguards. (§ 3303.) These include, among other things, the officer's right to be informed of the nature of the investigation prior to any interrogation, the right to be represented by a representative of his or her choice (*id.*, subds. (c), (i)), access to the tape if the interrogation is recorded, the right to bring a recording device and the right to be warned that not answering questions may result in punitive action (*id.*, subds. (c), (g)).

The County notes that POBRA is a labor relations statute that provides procedural protections for police officers during administrative and disciplinary actions initiated by their employers. (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 572–574 [273 Cal.Rptr. 584, 797 P.2d 608] (*Pasadena Police Officers Assn.*).) The Supreme Court held the protections of the Act "apply when a peace officer *is interrogated in the course of an administrative investigation* that might subject the officer to punitive action, such as 'dismissal, demotion, suspension, reduction in salary, written reprimand or transfer for purposes of punishment.' [Citation.]" (51 Cal.3d at p. 574, italics added.)

But the POBRA does not apply to all investigations and interrogations. There are two exceptions. POBRA does not apply "to any interrogation of a public safety officer in the normal course of duty, counseling, instruction, or informal verbal admonishment by, or other routine or unplanned contact with, a supervisor or any other public safety officer . . . ." (§ 3303, subd. (i).) Nor does POBRA cover "an *investigation concerned solely and directly with alleged criminal activities.*" (§ 3303, subd. (i), italics added; see *Gilbert v. City of Sunnyvale* (2005) 130 Cal.App.4th 1264, 1287 [31 Cal.Rptr.3d 297]

*(Gilbert)*; *Hinrichs v. County of Orange* (2004) 125 Cal.App.4th 921, 927 [23 Cal.Rptr.3d 186]; *Mounger v. Gates* (1987) 193 Cal.App.3d 1248, 1257, fn. 9 [239 Cal.Rptr. 18].)

Van Winkle claims sheriff's departments often initiate criminal investigations as shams to conduct disciplinary investigations without affording POBRA protections. But that is a factual issue. *(Steinert v. City of Covina* (2006) 146 Cal.App.4th 458, 465 [53 Cal.Rptr.3d 1] *(Steinert).)* Van Winkle did not plead facts showing that this occurred here. Nor did he present evidence to show that the County engaged in such conduct. In his declaration in support of injunctive relief, he did not state facts suggesting that the criminal unit investigators had ulterior motives, were acting in dual capacities, or were working in conjunction with internal affairs or disciplinary investigators. He did not claim there was any collusion or assistance by his supervisor in the criminal investigation. At the hearing on the injunction, Van Winkle did not call any witnesses or present evidence to rebut the facts in Tennessen's, Smith's and Godfrey's declarations.

The County showed that this was an independent criminal investigation. The trial court found that the County "has taken significant steps to separate the criminal investigation from the internal administrative inquiry and has suspended the latter pending the completion of the former." The record supports these findings. The MCB which conducted a criminal investigation had no authority to conduct administrative investigations or make recommendations regarding discipline. The sheriff's department disciplinary investigators and its IAU do not investigate crimes and did not participate in the MCB criminal investigation. During the period when the MCB was conducting its criminal investigation, "Van Winkle was not being investigated, for any purpose, by the Sheriff's Department's Professional Standards Bureau or its [IAU]."

Relying on *CCPOA, supra,* 82 Cal.App.4th 294, Van Winkle contends that even if the criminal investigation was independent, POBRA applies because the investigation was conducted by agents of his employer. He claims the injunction is proper, but the trial court should have gone further and suppressed all his responses made during the sting operation. We disagree. *CCPOA* is distinguishable. It did not involve a law enforcement agency's sting operation to stop its officers from engaging in ongoing crimes. It was an investigation of prison guards concerning a prior incident involving the guards' alleged instigation of an attack on an inmate. Their employer, the Department of Corrections, threatened the guards with criminal and disciplinary action for not cooperating with the investigation. The Court of Appeal held that POBRA applied to this hybrid investigation. Then in dictum the court said, "Almost every administrative investigation of alleged misconduct could

be recast as a criminal investigation to avoid the requirements of the Act. Thus, we agree that the criminal investigations referred to in subdivision (i) of section 3303 . . . *must be ones conducted primarily by outside agencies* without significant active involvement or assistance by the employer. [Fn. omitted.]" (82 Cal.App.4th at pp. 308–309, italics added.)

■ The County contends this dictum conflicts with the express language of section 3303 and impedes law enforcement agencies from pursuing their own personnel who commit crimes. We agree. In interpreting a statute we first look to the words the Legislature used. " 'If the language is clear and unambiguous there is no need for construction . . . .' " (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) If the statute is susceptible to more than one interpretation "[w]e must select the construction that comports most closely with the apparent intent of the Legislature . . . and avoid an interpretation that would lead to absurd consequences. [Citation.]" (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].)

Section 3303, subdivision (i), states in relevant part, "This section shall not apply to any interrogation of a public safety officer in the normal course of duty . . . nor shall this section apply to an investigation concerned solely and directly with alleged criminal activities." These exemptions apply to the employers who are covered by the Act. (*City of Los Angeles v. Superior Court* (1997) 57 Cal.App.4th 1506, 1515 [67 Cal.Rptr.2d 775] (*City of Los Angeles*).) The Legislature unambiguously delineated the investigations they could institute. It defined the ones subject to POBRA, such as disciplinary actions, from those which were not (e.g., routine investigations and criminal investigations).

In *CCPOA*, the court concluded that section 3303, subdivision (i), covers only nonemployer law enforcement agencies. But there is no language in the Act which supports this interpretation. POBRA only applies to law enforcement employers. (§ 3303, subd. (i).) There would be no need for the Legislature to have added this provision to regulate the conduct of agencies that are not covered by the Act. Although *CCPOA* assumed that subdivision (i) of section 3303 is superfluous for employers, other courts have rejected that interpretation. (*City of Los Angeles, supra*, 57 Cal.App.4th at p. 1515.)

If lawmakers had believed that law enforcement employers could not conduct independent criminal investigations, or would fraudulently initiate them to undermine POBRA, they would have excluded them from section 3303, subdivision (i), or they would have applied POBRA to all employer investigations without exception. But they did not do so for a good reason. They did not intend POBRA to limit or interfere with legitimate criminal

investigations, or to impede an "agency's efforts to police itself." (*Pasadena Police Officers Assn., supra,* 51 Cal.3d at p. 579.)

The court in *CCPOA* misinterpreted section 3303, subdivision (i), and narrowed its scope. The statutory language regarding criminal investigations does not limit the law enforcement agencies that may conduct those investigations. Yet, the court assumed that it needed to alter section 3303, subdivision (i), because it believed law enforcement employers will routinely violate POBRA. But the court had no evidence to support its speculation that they would be scofflaws. Nor did it have the authority to alter the legislative definition of the exempt investigations without legislative guidance. (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73–74 [109 Cal.Rptr.2d 1, 26 P.3d 332] (*Cornette*).)

The Legislature knew there could be abuses by law enforcement employers who were conducting criminal and internal affairs investigations of their employees. That is why it qualified the criminal investigation exemption provision with the language that the investigation had to be "concerned solely and directly with alleged criminal activities." (§ 3303, subd. (i).) The County notes that the legislative history reflects that there was no need to regulate purely criminal investigations. Officers have *Miranda* protections. POBRA is designed to reform disciplinary investigations where officers are ordered by their superiors or internal affairs departments to answer questions without those protections. (§ 3303, subd. (h).)

In *CCPOA,* the court apparently assumed that trial courts could not distinguish between the types of investigations law enforcement employers conduct. But POBRA allows officers to bring actions so that trial courts can make that determination. (*Steinert, supra,* 146 Cal.App.4th at p. 465.) Courts do in fact decide whether employer investigations fall within POBRA as disciplinary interrogations or are exempt as routine inquiries. (*Steinert,* at pp. 461–462.) They are able to determine whether routine questions "begin to shade into an investigation" covered by POBRA. (*City of Los Angeles, supra,* 57 Cal.App.4th at p. 1514.) They also decide whether investigations are partly criminal, and within POBRA, or solely criminal and exempt. (*Gilbert, supra,* 130 Cal.App.4th at p. 1287.)

■ To apply the *CCPOA* dictum here would amount to a revision of the Act. "A court may not rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed. [Citations.]" (*Cornette, supra,* 26 Cal.4th at pp. 73–74.)

Van Winkle claims the Legislature intended POBRA to apply to sting operations. If suspected officers are entitled to POBRA advisements before

initiating a sting operation, that would be the end of sting operations. This is contrary to the state's policy favoring them as an effective tool to uncover crime. (*People v. Sanchez* (1998) 60 Cal.App.4th 1490, 1495–1496 [71 Cal.Rptr.2d 309]; *Provigo Corp. v. Alcoholic Beverage Control Appeals Bd.* (1994) 7 Cal.4th 561, 569 [28 Cal.Rptr.2d 638, 869 P.2d 1163]; *People v. Wesley* (1990) 224 Cal.App.3d 1130, 1145 [274 Cal.Rptr. 326].)

■ "[T]he sting is an indispensable method for detecting certain types of crime, such as public corruption" by police officers. (*Alexander v. DeAngelo* (7th Cir. 2003) 329 F.3d 912, 917–918.) Targets of a sting are not entitled to warnings or the type of advisements that they would receive if they were in custody. (*People v. Walker* (1988) 47 Cal.3d 605, 629 [253 Cal.Rptr. 863, 765 P.2d 70]; *People v. Leach* (1975) 15 Cal.3d 419, 442 [124 Cal.Rptr. 752, 541 P.2d 296].)

Moreover, under Van Winkle's theory, if the department began the sting without a warning it could not pursue disciplinary proceedings because all evidence obtained would be excluded due to the absence of prior POBRA advisements. Given these restrictions, the department might refrain from conducting sting operations of its personnel. This would place it in the position of having to either condone ongoing criminality in its ranks or face POBRA sanctions in order to conduct an effective sting.

The present case is distinguishable from *CCPOA* because here the trial court found there was an independent criminal investigation of Van Winkle. Because it solely and directly involved his alleged criminal activities, it falls within section 3303, subdivision (i). In their amicus curiae brief, the California State Sheriffs' Association and the California Police Chiefs Association correctly note that Van Winkle received greater protections during his postarrest interrogation than he would have received in a disciplinary investigation. (*Pasadena Police Officers Assn., supra*, 51 Cal.3d at p. 577 [Legislature intended "that a law enforcement agency should retain greater latitude when it investigates suspected officer misconduct than would be constitutionally permissible in a criminal investigation"].) When Van Winkle was interrogated by the MCB detective, he was advised it was a criminal investigation, not an administrative one. Van Winkle knew this because he had been arrested and was in custody. He made statements voluntarily after he waived his *Miranda* rights. He was advised that because it was not an administrative investigation the detective could not order him to speak. There is no evidence in this record to show that he was confused about the nature of this investigation or his rights.

We have reviewed Van Winkle's remaining contentions and conclude they are without merit.

The judgment is reversed. The injunction is vacated. Costs on appeal are awarded to the County.

Yegan, J., and Perren, J., concurred.