Filed 4/26/13

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> STATE PERSONNEL BOARD, <br><br> Defendant; <br><br> ─────────────────────── <br><br> MOISES MOYA, <br><br> Real Party in Interest and Appellant. | D061653 <br><br> (Imperial County <br> Super. Ct. No. ECU06619) |

APPEAL from a judgment of the Superior Court of Imperial County, Donal B. Donnelly, Judge. Affirmed.


Michelle L. Hoy and Rudy E. Jansen for Real Party in Interest and Appellant.

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Senior Assistant Attorney General, and Chris A. Knudsen, Deputy Attorney General, for Plaintiff and Respondent California Department of Corrections and Rehabilitation.

## INTRODUCTION

In this case, we consider whether the Public Safety Officers Procedural Bill of Rights Act (the Act) (Gov. Code,[1] § 3300 et seq.) excepts internal workers' compensation fraud investigations from the one-year limitations period established in section 3304, subdivision (d)(1). We conclude it does and affirm the judgment.

## BACKGROUND

The parties do not dispute the relevant facts of this case. On August 8, 2008, Stephanie Tapia, the return-to-work coordinator at Centinela State Prison (prison), sent the prison's warden, Michael A. Smelosky, a memo requesting corrections sergeant Moises Moya be investigated for workers' compensation fraud. In the memo, Tapia stated Moya had filed a workers' compensation claim on May 5, 2008, indicating he injured his right wrist at work when a coworker inadvertently closed it in a door. Two days later, a doctor at an industrial healthcare center evaluated Moya and diagnosed him with a right wrist contusion. On June 12, 2008, a hand specialist evaluated Moya and diagnosed him with a fractured right wrist. As of a result of the injury, Moya was unable to work. However, someone subsequently informed Tapia that Moya was seen working out at a gym and riding around town on his motorcycle in violation of his work restrictions.

Accompanying the memo was an anonymous letter alleging Moya had actually injured his wrist in an off-duty fight rather than at work. The letter stated Moya attended

---

[1]     Further statutory references are also to the Government Code unless otherwise stated.

an off-duty event called "Battle of the Badges." His ex-girlfriend came to the event with a male friend. Enraged, Moya started a parking lot brawl with the man. Moya injured his hand during the fight, but did not seek medical attention. Instead, he waited for an incident to happen at work so he could file a workers' compensation claim for his hand injury.

Approximately a month after receiving Tapia's memo, Smelosky requested the Internal Affairs Office (IA Office) of the Department of Corrections and Rehabilitation (Department) investigate the allegations. In November 2008 the IA Office started a criminal investigation into whether Moya had committed workers' compensation fraud. Investigators reviewed hundreds of documents and interviewed numerous witnesses, including the hand specialist who evaluated Moya. The hand specialist told investigators Moya's injury was more consistent with a fight than with a work injury.

A little over a year later, in December 2009, the IA Office submitted a report of its investigation to the Imperial County District Attorney's Office, which declined to prosecute. Two months later, in February 2010, the IA Office submitted the report to the San Diego County District Attorney's Office. The San Diego County District Attorney's Office requested additional investigation, which the IA Office completed and provided in June 2010. In July 2010 the San Diego County District Attorney's Office also declined to prosecute the matter.

Meanwhile, in January 2010, the IA Office opened an administrative investigation. As part of the administrative investigation, investigators interviewed Moya in April 2010 about his workers' compensation claim and how he injured his wrist.

3

On August 3, 2010, approximately two years after Tapia requested the fraud investigation, the Department served Moya with a notice of adverse action (notice) dismissing him from his position for, among other causes, dishonesty under section 19572, subdivision (f). As support for the dishonesty charge, the notice alleged Moya: (1) submitted a workers' compensation claim and other documents falsely stating he injured his hand and wrist at work; (2) lied to the hand specialist about how he injured his wrist; and (3) lied during his interview with investigators about how he injured his wrist.

Moya appealed his dismissal to the State Personnel Board (Board). He then filed a motion to dismiss the notice, arguing it was barred by the Act's one-year statute of limitations contained in section 3304, subdivision (d). The Department countered by arguing section 3304, subdivision (d)(2)(H), of the Act provides an exception to the limitations period for investigations into allegations of workers' compensation fraud. Additionally, the Department argued the portion of the notice involving the allegation Moya lied during his interview with the IA Office was timely. The Department also argued the statute of limitations was tolled under section 3304, subdivision (d)(2)(A), because Moya's conduct was the subject of a criminal investigation.

In January 2011 the Board issued an order directing the Department to provide evidence the limitations period should be tolled under section 3304, subdivision (d)(2)(H). The Department submitted two declarations showing it had conducted a criminal investigation into Moya's conduct, followed by an administrative investigation.

On April 6, 2011, the Board issued a written decision finding the notice was time-barred and dismissed the action. The Board relied on its decision in *In re Appeal of*

4

*Andrew Ruiz* (2005) SPB Dec. No. 05-03 (*Ruiz*) to find that the exception in section 3304, subdivision (d)(2)(A), does not apply to internal criminal investigations.  The Board relied on the same decision to similarly find the exception in section 3304, subdivision (d)(2)(H), does not apply to internal workers' compensation fraud investigations.  The Department filed a petition for rehearing, which the Board denied without comment.

The Department petitioned the superior court for a writ of mandate, arguing the Board committed a clear error of law because section 3304, subdivision (d)(2)(H), plainly created an exception to the limitations period for workers' compensation fraud investigations and does not contain any language requiring that the investigations be external rather than internal.  The superior court agreed and granted the petition.

DISCUSSION

The sole issue in this case is whether the trial court properly construed section 3304, subdivision (d)(2)(H).  " ' [T]he trial court's construction of a statute is purely a question of law and is subject to de novo review on appeal.' "  (*Sulier v. State Personnel Bd.* (2004) 125 Cal.App.4th 21, 25 (*Sulier*); *Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1076-1077 (*Breslin*).)

"In construing statutes, 'our fundamental task is "to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute."  [Citations.]  We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent.  [Citation.]  We give the language its usual and ordinary meaning, and "[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the

5

plain meaning of the language governs." [Citation.] If, however, the statutory language is ambiguous, "we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." [Citation.] Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute.' " (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 321 (*Mays*).)

"Initially enacted in 1976 (Stats. 1976, ch. 465, § 1, p. 1202), [the Act] 'sets forth a list of basic rights and protections which must be afforded all peace officers [citation] by the public entities which employ them. It is a catalogue of the minimum rights [citation] the Legislature deems necessary to secure stable employer-employee relations [citation].' [Citations.] The various procedural protections provided by [the Act] 'balance the public interest in maintaining the efficiency and integrity of the police force with the police officer's interest in receiving fair treatment.' " (*Mays*, *supra*, 43 Cal.4th at p. 320.)

Among the Act's procedural protections, section 3304, subdivision (d)(1) generally provides: "[N]o punitive action, nor denial of promotion on grounds other than merit, shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct." However, of relevance here, the one-year limitation period does not apply:

6

"(A) If the act, omission, or other allegation of misconduct is also the subject of a criminal investigation or criminal prosecution, the time during which the criminal investigation or criminal prosecution is pending shall toll the one-year time period. [¶] . . . [¶]

"(H) *If the investigation involves an allegation of workers' compensation fraud on the part of the public safety officer*."  (§ 3304, subd. (d)(2), italics added.)

The Department contends the latter exception applies in this case because the investigation at issue involved an allegation of workers' compensation fraud by Moya. Moya contends the exception does not apply because the investigation in this case was not conducted by a third party.  We disagree with Moya.

The language of the exception is neither ambiguous nor unclear.  It provides that the one-year limitations period does not apply to investigations involving an allegation of workers' compensation fraud by the subject officer.  There is no dispute the investigation in this case involved an allegation of workers' compensation fraud by Moya.  Thus, the requirements for application of the exception have been satisfied.

Contrary to Moya's assertion, the statute does not require that the investigation be conducted by a third party for the exception to apply and we have no power to graft such a requirement into the statute.  (*Breslin*, *supra*, 146 Cal.App.4th at p. 1080; *Sulier*, *supra*, 125 Cal.App.4th at p. 26; see also *California Correctional Peace Officers' Assn. v. State of California* (2010) 188 Cal.App.4th 646, 656 [an appellate court's role is to interpret the

7

law, not to second-guess the Legislature's choices or insert what the Legislature omitted].)

Moya's reliance on the Board's decision in *Ruiz* is misplaced. *Ruiz* involved the application of the exception in section 3304, subdivision (d)(2)(A), for allegations that are the subject of a criminal investigation or prosecution. (*Ruiz, supra*, SPB Dec. No. 05-03 at p. 5.) The Board in *Ruiz* determined this exception applied "only where the criminal investigation is conducted by an outside, independent investigative entity." (*Ruiz,* at p. 10.) The Board was concerned a contrary interpretation would defeat the Act's purposes by allowing "any agency employing peace officers [to] avoid the one-year limitations period present in [section 3304, subdivision (d)(1)] by simply designating any investigation it conducts into alleged misconduct by a peace officer a 'criminal' investigation." (*Ruiz*, at p. 10.)

While we must generally consider and respect the Board's interpretation of a statute within its administrative jurisdiction, we are not bound by the Board's interpretation nor are we required to accord any deference to a clearly erroneous interpretation of an unambiguous statute. (*Bonnell v. Medical Board of California* (2003) 31 Cal.4th 1255, 1264-1265; *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12.) The Board has no greater power than we do to graft a nonexistent requirement into a statute.

The Board based its decision in *Ruiz*, and indirectly its decision in this case, on *California Correctional Peace Officers Assn. v. State of California* (2000) 82 Cal.App.4th 294 (*CCPOA*). In the *CCPOA* case, corrections officers were interrogated as

8

part of a joint criminal investigation being conducted by their employer and the California Department of Justice (DOJ). When their employer did not provide them with certain protections delineated in section 3303, including the right to have a representative present during the interrogation, the officers sought and obtained a preliminary injunction against their employer and the DOJ. (*CCPOA*, *supra*, 82 Cal.App.4th at pp. 300-302, 309.) On appeal, their employer and the DOJ argued the trial court should not have issued an injunction because the protections in section 3303 did not apply to the type of criminal investigation they conducted. (*CCPOA*, at p. 304.) They based their argument in part on two provisions in the Act: section 3303, subdivision (i), which provides the "section shall not apply 'to an investigation concerned solely and directly with alleged criminal activities' "; and section 3304, subdivision (a), which permits the head of a law enforcement agency to order a subordinate law enforcement officer, under the threat of an insubordination charge, to cooperate with other law enforcement agencies conducting law enforcement investigations. (*CCPOA*, at p. 307.)

The officers countered that these two provisions should be construed narrowly to apply only to investigations conducted by outside agencies substantially independent of the employer otherwise the purpose of the act would be defeated. (*CCPOA*, *supra*, 82 Cal.App.4th at p. 308.) The appellate court agreed and held "the criminal investigations referred to in subdivision (i) of section 3303 and subdivision (a) of section 3304 must be ones conducted primarily by outside agencies without significant active involvement or assistance by the employer." (*CCPOA*, at pp. 308-309, fn. omitted.)

Neither section 3303, subdivision (i), nor section 3304, subdivision (a), were at issue in *Ruiz* or are at issue here. In addition, the *CCPOA* court did not consider, much less discuss, how narrowing the scope of section 3303, subdivision (i), affected the scope of section 3304, subdivision (d), or any other provision of the Act. "[I]t is axiomatic that cases are not authority for propositions not considered." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176.)

A more recent appellate court decision has disagreed with the holding and criticized the analysis of the *CCPOA* decision. (*Van Winkle v. County of Ventura* (2007) 158 Cal.App.4th 492, 497 (*Van Winkle*).) The *Van Winkle* court explained, "In *CCPOA*, the court concluded that section 3303, subdivision (i), covers only nonemployer law enforcement agencies. But there is no language in the Act which supports this interpretation. [The Act] only applies to law enforcement employers. [Citation.] There would be no need for the Legislature to have added this provision to regulate the conduct of agencies that are not covered by the Act. . . . [¶] If lawmakers had believed that law enforcement employers could not conduct independent criminal investigations, or would fraudulently initiate them to undermine [the Act], they would have excluded them from section 3303, subdivision (i), or they would have applied [the Act] to all employer investigations without exception. But it did not do so for a good reason. They did not intend [the Act] to limit or interfere with legitimate criminal investigations, or to impede an 'agency's efforts to police itself.' [Citation.]

"The court in *CCPOA* misinterpreted section 3303, subdivision (i), and narrowed its scope. The statutory language regarding criminal investigations does not limit the law

enforcement agencies that may conduct those investigations. Yet, the court assumed that it needed to alter section 3303, subdivision (i), because it believed law enforcement employers will routinely violate [the Act]. But the court had no evidence to support its speculation [there] would be scofflaws. Nor did it have the authority to alter the legislative definition of the exempt investigations without legislative guidance." (*Van Winkle*, *supra*, 158 Cal.App.4th at pp. 499-500.)

The *Van Winkle* court went on to point out that to follow the *CCPOA* court's interpretation of section 3303, subdivision (i) "would amount to a revision of the Act. 'A court may not rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed.' " (*Van Winkle*, *supra*, 158 Cal.App.4th at p. 500.) As we agree with these criticisms, we cannot defer to the Board's decision in *Ruiz* or its application to this case.

Although we have not discerned any ambiguity in the language of section 3304, subdivision (d)(2)(H), Moya insists we must resort to extrinsic aids because his interpretation of the statute is equally reasonable. However, just because Moya's interpretation might result in a reasonable rule consistent with the overall purpose of the Act does not make the interpretation itself reasonable. An interpretation is reasonable only if the statutory language is susceptible to it. (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1055 [only when the language of a statute is susceptible to more than one reasonable construction may we turn to extrinsic aids to ascertain meaning].) Because section 3304, subdivision (d)(2)(H), contains no language

11

susceptible to the narrow interpretation Moya urges, his interpretation is not a reasonable one for purposes of determining whether resort to extrinsic aids is necessary.

Nonetheless, we reviewed the legislative history of the section 3304 and found nothing indicating the Legislature intended to limit the application of subdivision (d)(2)(H) solely to workers' compensation fraud investigations conducted by third parties. The exception for workers' compensation fraud investigations was added as part of extensive revisions to the Act enacted in 1997. (Stats. 1997, ch. 148, § 1.) Most of the revisions, including the language for the workers' compensation fraud investigation exception, came from earlier legislation (Sen. Bill No. 282 (1995-1996 Reg. Sess.) that had been vetoed. (Dept. of Personnel Admin., Enrolled Bill Report on Assem. Bill No. 1436 (1997-1998 Reg. Sess.) as amended June 17, 1997, p. 2.)

The language of the exception has not changed since its first introduction in the previously vetoed bill. (Sen. Bill No. 282 (1995-1996 Reg. Sess.) as amended Aug. 29, 1996.) None of the committee reports discussing the enacted legislation or its vetoed predecessor substantively analyzes the exception. Instead, the reports simply parrot the exception's language. (See, e.g., Assem. Off. of Research, Concurrence in Sen. Amends. to Assem. Bill No. 1476 (1997-1998 Reg. Sess.) as amended June 17, 1997, p. 2; Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 282 (1995-1996 Reg. Sess.) as amended Aug. 29, 1996, p. 2.)

One contemporaneous executive branch report noted generally that the exceptions to the one-year limitations period were added to the statute to address "concerns by opponents that certain misconduct investigations may require additional time."

12

(Governor's Office of Planning and Research, Enrolled Bill Report on Assem. Bill No. 1476 (1997-1998 Reg. Sess.) as amended June 17, 1997, p. 4.) At most, this comment reflects a legislative recognition that the aim of having speedy investigations into and resolution of misconduct allegations is not achievable in all instances. The comment offers no guidance on the intended scope of any particular exception. The comment does, however, undermine Moya's argument that our failure to adopt his interpretation would lead to an absurd or unintended result as it demonstrates delayed outcomes were anticipated for some investigations.

Moya's citation to a senate committee report on the prior vetoed bill describing its sponsor's intent does not assist our review. We recognize "statements by a bill's sponsor appearing in a committee report have been quoted and relied upon by our Supreme Court in determining the meaning of a statute." (*Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 368, 380, fn. 3.) However, we cannot rely on the proffered statement in this case because the prior vetoed bill never became law and the proffered statement was not included in the legislative history of the bill that became law. The legislative history of the bill that became law instead quotes the intent of its author, who was different than the authors of the vetoed bill,[2] as follows:

---

[2] Senator Petris initially authored the vetoed bill and Senator Johannessen later took over as its author. (California Highway Patrol, Enrolled Bill Report on Assem. Bill No. 1436 (1997-1998 Reg. Sess.) as amended June 17, 1997, p. 2.) Assembly Member Cardoza authored the bill that became law. (Assem. Bill No. 1436, (1997-1998 Reg. Sess.) as introduced Feb. 28, 1997.)

13

"Current law for state peace officers requires completion and prosecution of state peace officers within three years.  Current law for local peace officers has no time limit.  This bill requires peace officers' disciplinary investigations to be completed within one year.  The bill excepts certain multi-jurisdiction and other investigations for which management has no reasonable control.

"All representative law enforcement groups have carefully negotiated this bill and agree on the need and reasonableness of this bill; in essence, it is unfair to our peace officer[s] not to investigate and bring charges or dismiss the action within a reasonable time.  One year is the agree[d]-upon time by both labor and management."  (Assem. Off. of Research, Concurrence in Sen. Amends. to Assem. Bill No. 1436 (1997-1998 Reg. Sess.) as amended June 17, 1997, pp. 2-3.)

This statement of intent affirms what it already apparent from the plain language of the statute:  the Legislature created a generally applicable time limit for investigating and bringing charges against a law enforcement officer, but excepted certain investigations the timing of which it did not believe management could control.  As this description could conceivably include both internal and external workers' compensation fraud investigations, we cannot glean from this statement a clear legislative intent to limit the exception for workers' compensation fraud investigations solely to third party investigations.  To the contrary, the author's statement that the bill was carefully negotiated and agreed upon by all stakeholders persuades us all the more that the Legislature meant exactly what it said—that the one-year limitation period in section

14

3303, subdivision (d)(1), does not apply to any investigation, including the one at issue here, involving allegations of workers' compensation fraud by a public safety officer.


DISPOSITION

The judgment is affirmed.  The Department is awarded its costs on appeal.


McCONNELL, P. J.

WE CONCUR:


McINTYRE, J.


IRION, J.